**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| James Marshall, | : | Case No. 5:09CV1501 |
| Plaintiff | : | Judge James S. Gwin |
| v. | : | Magistrate Judge David S. Perelman |
| Commissioner of Social Security, | : | **REPORT AND RECOMMENDED DECISION** |
| Defendant | : | |

This action brought under 42 U.S.C. §§405(g) and 1383(c)(3), in which the plaintiff seeks judicial review of the defendant's final determination denying his applications for disability insurance benefits (DIB), 42 U.S.C. §§416(i), 423, and supplemental security income (SSI), 42 U.S.C. §1381 et seq., is very troubling to this Court.

Plaintiff applied for benefits on January 18, 2006, alleging an onset date of April 1, 2005. In an accompanying Disability Report - Adult the questions "What are the illnesses, injuries or conditions that limit your ability to work?" and "How do your illnesses, injuries or conditions limit your ability to work?" were answered "slow learner" and "Jobs I have applied for do not want a slow learner."

Upon denial of plaintiff's claims on the state agency level hearing de novo before an Administrative Law Judge (hereinafter ALJ) was requested. Evidentiary hearing, at which plaintiff was represented by counsel, was held on August 12, 1008. Also testifying at that proceeding were a medical expert, Dr. Martin Macklin, and a vocational expert, Mr. Bruce Holderead.

At the time of the hearing the plaintiff was forty years of age (DOB 6/10/68). His certified earnings record reflect posted earnings from 1988, when he would have been twenty years old, through 2005, a continuous eighteen year period.

His last two jobs were at a Tops Market,[1] where he is shown to have been employed from 2000 through 2004, followed by a short period of employment at a Big Lots store. He testified that he started working at the Tops Market as a bagger but was moved to stocking shelves and cleaning bathrooms, which he was doing "Basically until they went out of business." At Big Lots he started doing the same type of jobs, but worked as a cashier for about a year. It is unclear what were the circumstances of his leaving that employment.[2]

In his examination of Dr. Macklin plaintiff's counsel focused on the question of whether the plaintiff satisfied the criteria of Listing 12.05(c) for recognition of disability,[3] that Listing pertaining to mental retardation, in pertinent part providing:

> Mental retardation refers to a significantly sub-average general intellectual functioning with deficits in adaptive behavior initially manifested during the developmental period (before age 22). . . .The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
>
> \* \* \*
>
> C. A valid verbal, performance or full scale IQ of 60 through 70 and a physical or other mental impairment imposing additional and significant work-related limitation of function.

---

[1] His employment history prior thereto, according to the earnings report, was with First National Supermarkets, which may have been acquired by Tops.

[2] His attorney asked the leading question "Why did you end up getting fired?," without the plaintiff having testified that he had been fired, to which the plaintiff responded "Because I wasn't quick enough."

[3] Plaintiff's counsel was not alone in thinking that Listing 12.05 should be considered. A state medical consultant who competed a Psychiatric Review Technique form in April 2006 checked off that Listing, but concluded that the criteria were not precisely satisfied and that "Borderline Intellectual Functioning" was the appropriate diagnosis. See, R.132.

The doctor testified that he did not believe that the plaintiff met or equaled this Listing because there was a lack of objective medical evidence of a significant physical impairment. He also testified that he could not conclude that any deficits in adaptive behavior started during the plaintiff's developmental period, the simple fact that the plaintiff was in special ed classes in high school not being sufficient. He also noted that IQ testing in 1984 reflected a higher IQ than was found upon evaluation for purpose of this proceeding in April 2006 by a psychologist, Dr. Herschel Pickholtz.

Dr. Pickholtz found a full scale IQ of 69, with verbal and performance scores of 72 and 70. He added, however, "His overall abilities in terms of independence and adaptation as well as work performance is somewhat inconsistent with true mental retardation and I think his true levels of intellectual functioning probably falls within the borderline range of functioning."

Dr. Pickholtz assigned the plaintiff a current GAF of "around 60," signifying "moderate symptoms." He concluded that "His overall ability to relate to co-workers and others falls within the mild range of impairment at worst. His overall abilities to work eight-hour work activities relative to thinking and memory currently fall within the mild range of impairment. His overall abilities to handle eight-hour work activities relative to pace, consistency and reliability as well as to handle expectations and demands of low skilled and unskilled labor, from a psychological perspective, falls within the mild range of impairment."[4]

Given all the foregoing, i.e.: the plaintiff's extended employment history, notwithstanding his limited intellect; that he lost his job at Tops by reason of downsizing, not inability to perform his duties; Dr. Pickholtz's reservations as to the plaintiff's true IQ and his conclusions concerning

---

[4]Under "Background Information" it is stated that the plaintiff reported working at Tops for fifteen years "and left there because of downsizing not because he couldn't perform."

the plaintiff's work-related abilities; and Dr. Macklin's testimony, the obvious question is why there should be any doubt as to the reliability of the defendant's final determination that the plaintiff is not disabled.

The answer to this question lies in the structure of the ALJ's decision.

While it is clear that plaintiff's counsel was, to a significant degree, maintaining that the plaintiff should be found disabled as meeting or equaling Listing 12.05(c) there is not a single mention of that Listing in the ALJ's decision.[5] This reviewing court has no way of knowing why he gave no consideration to whether the plaintiff could not be deemed disabled under that Listing. It is not for this reviewing court to guess which, if any or how many, of the factors listed above he relied upon, nor to make an initial determination the ALJ should have made. Knowing that the plaintiff was relying on Listing 12.05(c) it was the ALJ's obligation to provide a reasoned explanation for his decision that the Listing does not apply. It is not this reviewing court's responsibility to search for one, in order to determine whether that decision is supported by substantial evidence within the rationale of Richardson v. Perales, 402 U.S. 389 (1971).

The fact that this Court believes that the defendant's final determination that the defendant is not disabled is correct does not excuse the ALJ's failure to provide a properly articulated decision vis-a-vis a key contention made on behalf of the plaintiff. It is, therefore, with great reluctance that this Court recommends that the defendant's final determination be set aside and an order of remand entered pursuant to the fourth sentence of §405(g), knowing full well that it is virtually inevitable that this is an exercise in futility insofar as the plaintiff's efforts to obtain the awards he seeks is

---

[5]He did consider Listing 12.04, but not 12.05.

concerned.[6]

s/DAVID S. PERELMAN
United States Magistrate Judge

DATE:   July 22, 2010

**OBJECTIONS**

Any objections to this Report and Recommended Decision must be filed with the Clerk of Courts within fourteen (14) days of receipt of this notice.  Failure to file objections within the specified time waives the right to appeal the District Court's order.  *See, United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See, also, Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).

---

[6]If this recommendation is accepted it will moot the issue of a potential sentence six remand for consideration of the evidence submitted by the plaintiff after the ALJ's decision was entered.  In the interest of completeness, this Court finds that such evidence does not satisfy the "new and material" standard of §405(g), as it does not add anything suggesting that a different conclusion would have been reached if the evidence had been before the ALJ.  See, Sizemore v. Secretary of Health and Human Services, 865 F.2d 709, 711 (6th Cir. 1988).

5